United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN ABBEY, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, DEPARTMENT OF THE NAVY, et al.,<br><br>    Defendants. | Case No. 20-cv-06443-JD<br><br>**ORDER RE MOTION TO DISMISS SECOND AMENDED COMPLAINT** |

This case alleges tort claims against the United States of America, Department of the Navy, by current and former San Francisco Police Department (SFPD) employees who have worked at Building 606 at the former Hunters Point Naval Shipyard (HPNS) in San Francisco. The City and County of San Francisco (which is not a party to this case) leased the Building 606 property from the Navy, and the SFPD has stationed "hundreds" of employees there since 1997. Dkt. No. 88 ¶ 15. The SFPD employee plaintiffs say that they were exposed to "unsafe levels of radioactive and otherwise hazardous substances" while working at the Building 606 property. *Id.* ¶ 1. Plaintiffs also include the spouses and domestic partners of the SFPD employees, and surviving family members or personal representatives of deceased former employees. *Id.* ¶¶ 32-33.

After the Court dismissed the first amended complaint with leave to amend, Dkt. No. 87, plaintiffs filed a second amended complaint (SAC), Dkt. No. 88, which is now the operative complaint. The SAC alleges that the Navy "fail[ed] to warn the City and County of San Francisco about the hazardous substances used and released at HPNS," and that this "failure to warn" was "a

substantial factor in causing the plaintiffs' acute symptoms and elevated risk of developing life-threatening cancers and other diseases." SAC ¶ 1. As before, plaintiffs allege claims against the United States for (1) negligent undertaking, negligent failure to warn, negligent supervision, negligence per se, and negligent misrepresentation; (2) public nuisance; (3) loss of consortium; (4) wrongful death; (5) negligent infliction of emotional distress -- fear of cancer; and (6) intentional infliction of emotional distress. *Id.* ¶¶ 219-87.

The United States asks to dismiss plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Dkt. No. 91. The United States contends that plaintiffs' claims are not within the United States' waiver of sovereign immunity under the Federal Tort Claims Act because they are subject to several waiver exceptions, 28 U.S.C. §§ 1346(b), 2671-80. *Id*. The parties' familiarity with the facts is assumed, and the complaint is dismissed with prejudice.

## DISCUSSION

The United States may be sued only to the extent that it has waived its sovereign immunity. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). In the absence of an express waiver, the Court has no jurisdiction over tort claims against the federal government. *Id*. The United States has waived immunity for a broad category of claims under the Federal Tort Claims Act (FTCA). In pertinent part, the United States has consented to be sued in civil actions for money damages for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

There are exceptions to this broad waiver of immunity, several of which the government has invoked here. Dkt. No. 91. The first of these is the "misrepresentation exception" under 28 U.S.C. § 2680(h). *Id*. at 3-6. This section carves out from waiver "[a]ny claim arising out of . . . misrepresentation," subject to qualifications for "acts or omissions of investigative or law enforcement officers of the United States Government" that are not applicable here.

Consequently, a claim based on an alleged misrepresentation is barred by sovereign immunity. This principle should be of no surprise because the Court expressly advised plaintiffs in the prior dismissal order that "the misrepresentation exception, 28 U.S.C. § 2680(h), appears likely to bar at least some portion of plaintiffs' allegations as currently pleaded in the FAC." Dkt. No. 87 at 3. The Court noted that "the exception applies -- and bars the government's liability -- when plaintiff's claim is one 'arising out of misrepresentation,'" and that that characterization appeared to "fit the allegations based directly on statements made by the Navy." *Id*. (citations omitted). Plaintiffs were directed in any amended complaint to "clearly identify those aspects of the government's conduct other than alleged misrepresentations that form the basis of plaintiffs' claims. *See Block v. Neal*, 460 U.S. 289, 298 (1983)." *Id*.

Even so, plaintiffs in effect doubled down on the misrepresentation theory in the SAC. The lead paragraph of the SAC makes this abundantly clear. Plaintiffs say that the United States' "failure to warn the City and County of San Francisco about the hazardous substances used and released at HPNS was a substantial factor in causing the plaintiffs' acute symptoms and elevated risk of developing life-threatening cancers and other diseases." SAC ¶ 1. The misrepresentation theme is repeated throughout the SAC. *See*, *e.g.*, *id*. ¶ 11 (the Navy "negligently told the City that there was no history of any radioactive substances at the Building 606 Property"); ¶ 12 (the Navy "told the City that the SFPD could use the Building 606 Property without exposing SFPD employees to health risk from exposure to hazardous substances"); ¶ 13 (the Navy "provided the City with a Finding of Suitability to Lease and property-specific environmental baseline survey results that included numerous material misrepresentations" and "false statements and failures to warn"); ¶ 24 ("As a result of these misrepresentations, concealments, omissions, and failures to warn by the Navy and by Tetra Tech, under the Navy's negligent supervision, the City continued to have plaintiffs work at HPNS during Tetra Tech's remediation activities"); ¶ 93 (the Navy "made false, misleading, and incomplete disclosures to the City, and failed to warn the City and its employees, related to and regarding the release and use of hazardous substances at the Subject Leased Property"); p. 37 ("After 1996, . . . the Navy continued to misrepresent the true extent of

hazardous contamination affecting plaintiffs' safety"); ¶¶ 243-44 (the Navy "negligently failed to warn the City and its employees" and "negligently misrepresented [the] facts").

As the Court cautioned last time, this will not do. The alleged misrepresentations in this case are by no means "collateral to the gravamen" of the SAC. *Esquivel v. United States*, 21 F.4th 565, 578 (9th Cir. 2021). "By [plaintiffs'] own account, the alleged misrepresentations are within the chain of causative events upon which plaintiffs' claim is founded." *Id.* (quotations and citation omitted). This is readily apparent in allegations that the Navy's failure to warn "was a substantial factor in causing" plaintiffs' injuries, and that "[r]elying on [the Navy's] representations and omissions, the SFPD relocated hundreds of its police employees to begin working at HPNS in 1997," thereby exposing plaintiffs to the harms they are complaining of. SAC ¶¶ 1, 15. Misrepresentation is at the heart of all of the claims in the SAC. Consequently, the misrepresentation exception to waiver of immunity applies, and the Court lacks jurisdiction over the SAC. *See Esquivel*, 21 F.4th at 578.

The same holds for omissions. A "negligent failure to inform," namely an omission, "is misrepresentation within the meaning of 28 U.S.C. § 2680(h)," and "[t]he intent of the section is to except from the Act cases where mere 'talk' or failure to 'talk' on the part of a government employee is asserted as a proximate cause of the damage sought to be recovered from the United States." *City and Cnty. of San Francisco v. United States*, 615 F.2d 498, 505 (9th Cir. 1980) (quotations and citations omitted); *see also Lawrence v. United States*, 340 F.3d 952, 958 (9th Cir. 2003) ("The misrepresentation exception shields government employees from tort liability for failure to communicate information, whether negligent, or intentional.") (citation omitted).

Plaintiffs' efforts to sidestep this conclusion are unavailing. They say that the exception should not apply because they did not personally rely on false statements, and were the "unfortunate and foreseeable victims of the misrepresentations that were made to the City." Dkt. No. 94 at 4-5. But as plaintiffs acknowledge, our circuit has "found that the exception applied, even though there had been no reliance by the plaintiffs." *Id.* at 6 (citing *Lawrence*, 340 F.3d 952, and *Doe v. Holy See*, 557 F.3d 1066 (9th Cir. 2009)). This applies here, as our circuit has signaled in an unpublished decision. In *Andrade v. United States*, 845 F. App'x. 594, 595 (9th Cir. 2021),

4

plaintiff Andrade went to CVS to pick up her opioid prescription, only to have a federally funded clinic, San Ysidro Health, "incorrectly claim[] that Andrade was not a patient" both to CVS staff as well as to the police, leading to Andrade's arrest. Andrade argued that the FTCA's misrepresentation exception did not apply to her negligence claim against the United States because "misrepresentation requires reliance and . . . there was no reliance here" by plaintiff or her daughter. *Andrade*, 845 F. App'x. at 595-56. The circuit stated that "we already rejected this argument in *Alexander v. United States*, 787 F.2d 1349, 1350-51 (9th Cir. 1986)." *Id*. The panel concluded that "[i]t does not matter whether the federal clinic negligently misinformed Andrade, a CVS pharmacist, or a San Diego Police officer. The 'gravamen of the claim' is still misrepresentation." *Id*. (citing *United States v. Neustadt*, 366 U.S. 696, 704 (1961)). The district court consequently lacked jurisdiction over Andrade's negligence claim. *Id*. at 596.

In *Alexander*, 787 F.2d 1349, the case cited by the *Andrade* panel, the circuit held that plaintiff Alexander's negligence claim against the United States was barred by the FTCA's misrepresentation exception even though the alleged misrepresentation had not been made directly to the plaintiff and thus he was not the one who had relied on it. Alexander had conditionally been hired by the Pacific Stock Exchange to work as a security officer, but his employment was terminated after the FBI provided to Pacific Stock Exchange a background check that "contained two arrest items that should not have been released because they had been ordered sealed by a California court." *Alexander*, 787 F.2d at 1350. Alexander did not himself rely on the erroneous "rap sheet." Nevertheless, noting the "broad reach of the 'misrepresentation' exception of section 2680(h)," the circuit held that "Alexander's claim . . . fits squarely into the category of 'negligent misrepresentation'" covered by that section, and was consequently barred. *Id*. at 1351 (citing *Neustadt*, 366 U.S. 696).

So too, here. These cases stand for the principle that the misrepresentation at the heart of the claim need not have been made directly to plaintiffs, and plaintiffs need not have directly relied, in order for the misrepresentation exception to apply and bar the claims. In *Neustadt*, 366 U.S. 696, the Supreme Court held that "§ 2680(h) comprehends claims arising out of negligent, as well as willful, misrepresentation," and that "[w]hile we do not condone carelessness by

government employees in gathering and promulgating . . . information, neither can we justifiably ignore the plain words Congress has used in limiting the scope of the Government's tort liability." *Neustadt*, 366 U.S. at 702, 710-11. The plain language of 28 U.S.C. § 2680(h) excepts from the United States' waiver of sovereign immunity "[a]ny claim arising out of . . . misrepresentation." Nothing in this language nor common sense supports the view that the government is immunized when sued directly by the party to which it makes a misrepresentation, but not when it is sued by downstream third parties who allege they were indirectly harmed by the alleged misrepresentation. The government is immunized from all claims "arising out of . . . misrepresentations," and plaintiffs' allegations show that their claims are such claims.

Plaintiffs say that the misrepresentation exception is "limit[ed] or suspend[ed]" in this case because "CERCLA imposes a specific and mandatory duty of disclosure on the Navy." Dkt. No. 94 at 6. This point is also unpersuasive. Plaintiffs did not present controlling authority for this theory, and instead draw largely irrelevant distinctions between CERCLA § 120(h)(1) and the National Housing Act section that was at issue in *Neustadt*. In *Neustadt*, the Supreme Court rejected the argument that the FTCA's misrepresentation exception was limited or suspended because of the government's "'specific duty' to make and communicate an[] accurate appraisal of the property" under Section 226 of the National Housing Act. *Neustadt*, 366 U.S. at 708. Textual variations between National Housing Act § 226 and CERCLA § 120(h)(1) hardly demonstrate that the misrepresentation exception does not apply here, all the more so in light of plaintiffs' cursory CERCLA argument that is unburdened by any case law. Dkt. No. 94 at 7. Moreover, in finding the misrepresentation exception to apply in *Neustadt*, the Supreme Court noted that Section 226 of the National Housing Act was added in 1954, when it could reasonably be supposed that Congress "was aware of the 'misrepresentation' exception in the Tort Claims Act, and that it had been construed by the courts to include 'negligent misrepresentation.'" *Neustadt*, 366 U.S. at 710. The same is true of CERCLA § 120(h)(1), as the government observes, *see* Dkt. No. 96 at 4 n.2, and CERCLA also lacks any express statutory language that violations of its "duty of disclosure" are to fall outside the FTCA's misrepresentation exception.

1  Plaintiffs' closing suggestion that their "injuries were caused by the Navy's negligent
2  performance of an operational task," Dkt. No. 94 at 8, are of no moment.  Plaintiffs say that their
3  allegations focus on the Navy's "duty as a landowner to exercise ordinary care or skill in the
4  management of its property."  *Id*.  That is not a fair characterization of the allegations in the SAC.
5  As discussed, the SAC underscores the centrality of the government's ostensible
6  misrepresentations and omissions to plaintiffs' claims.  That is so even though the Court directed
7  plaintiffs to make clear "those aspects of the government's conduct other than alleged
8  misrepresentations that form the basis of [their] claims."  Dkt. No. 87 at 3.  Plaintiffs' opposition
9  brief also emphasizes the theory that "the Navy breached a specific and mandatory statutory duty
10 to disclose when and where hazardous substances were stored, released, or disposed of at HPNS,"
11 and the Navy's breach of a "duty to warn."  Dkt. No. 94 at 9.  Such alleged failures to disclose and
12 warn are claims that are encompassed by the misrepresentation exception.  *Neustadt*, 366 U.S. at
13 710-11; *City and Cnty. of San Francisco*, 615 F.2d at 505; *Lawrence*, 340 F.3d at 958.

14 This is the bed plaintiffs have chosen to lie in, and they cannot avoid the consequences of
15 their decision.  The government seeks dismissal of all six of the claims in the SAC on the basis of
16 the misrepresentation exception, including the claims for public nuisance, intentional and
17 negligent infliction of emotional distress, loss of consortium, and wrongful death.  Dkt. No. 91 at
18 5-6.  Plaintiffs did not defend their claims with any degree of specificity, and made for all of them
19 the same arguments against the misrepresentation exception.  Dkt. No. 94 at 4-9.  Consequently,
20 the Court lacks jurisdiction over the SAC *in toto*.  The Court finds it unnecessary to reach the
21 government's additional arguments that plaintiffs' claims are barred by the FTCA's "contractor
22 exception" and "discretionary function exception" as well.  Dkt. No. 91 at 6-15.

## CONCLUSION

24 The United States' motion to dismiss is granted, Dkt. No. 91, and plaintiffs' second
25 amended complaint is dismissed in its entirety for lack of subject matter jurisdiction.

26 The Court's prior order not only flagged the misrepresentation exception issue that now
27 serves as the basis for dismissal, but also advised plaintiffs that they likely would not be given any
28 further opportunities to amend.  Dkt. No. 87 at 3-4.  Plaintiffs have shown no reason to believe

United States District Court
Northern District of California

further amendment might be fruitful, nor have they requested another chance to amend. Dkt. No. 94. The dismissal is consequently with prejudice. *See Chodos v. W. Publishing Co.*, 292 F.3d 992, 1003 (9th Cir. 2002).

The case is closed, and judgment will be entered against plaintiffs.

**IT IS SO ORDERED.**

Dated: January 17, 2023

JAMES DONATO
United States District Judge