**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| KEVIN ABBEY; et al.[*], | No. 23-15170 |
| *Plaintiffs-Appellants*, | D.C. No. 3:20-cv-06443-JD |
| v. | |
| UNITED STATES OF AMERICA; UNITED STATES DEPARTMENT OF THE NAVY, | OPINION |
| *Defendants-Appellees*, | |
| and | |
| TETRA TECH, INC., | |
| *Defendant*. | |

Appeal from the United States District Court
for the Northern District of California
James Donato, District Judge, Presiding

Argued and Submitted May 15, 2024
San Francisco, California

Filed August 20, 2024

---

[*] The court is not listing herein all of the numerous individual plaintiffs in this appeal.

Before:  Kenneth K. Lee and Daniel A. Bress, Circuit
Judges, and Gloria M. Navarro,[**] District Judge.

Opinion by Judge Lee

---

## SUMMARY[***]

---

### Federal Tort Claims Act

The panel affirmed the district court's dismissal for lack of subject matter jurisdiction of a Federal Tort Claims Act (FTCA) action, brought by current and former San Francisco Police Department (SFPD) employees, alleging that the United States misled the City of San Francisco and the SFPD about the safety of a contaminated former Naval shipyard that the City leased to use as a facility for SFPD employees.

The panel held that the FTCA's misrepresentation exception to the sovereign immunity waiver applied because it precludes any claims "arising out of" a misrepresentation.  Plaintiffs' claims arose out of the Navy's alleged misrepresentations, even if the Navy did not directly make them to plaintiffs.

The panel rejected plaintiffs' argument that the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) implicitly limited or suspended

---

[**] The Honorable Gloria M. Navarro, United States District Judge for the District of Nevada, sitting by designation.

[***] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

the misrepresentation exception because neither the statutory text nor canons of statutory construction suggest that Congress intended CERCLA to override the FTCA's misrepresentation exception.

## COUNSEL

Sara M. Peters (argued), Khaldoun A. Baghdadi, Clifton Smoot, and Kelly L. Ganci, Walkup Melodia Kelly & Schoenberger, San Francisco, California; Tiffany J. Gates, Law Offices of Tiffany J. Gates, San Luis Obispo, California; for Plaintiffs-Appellants.

Albert Lai (argued), Kenneth A. Haywood, Heidy L. Gonzalez, and Caroline Stanton, Trial Attorneys; Rosemary Yogiaveetil, Assistant United States Attorney; J. Patrick Glynn, Director, Torts Branch; August Flentje, Special Counsel, Civil Division; Brian M. Boynton, Principal Deputy Assistant Attorney General; United States Department of Justice, Washington, D.C.; for Defendants-Appellees.

# OPINION

LEE, Circuit Judge:

This case addresses the scope of the misrepresentation exception to the sovereign immunity waiver under the Federal Tort Claims Act (FTCA). While sovereign immunity generally shields the United States from lawsuits, Congress waived it for most tort claims. But the FTCA also carved out several exceptions to that sovereign immunity waiver, including for claims "arising out of," among other things, "misrepresentation." 28 U.S.C. § 2680(h).

Here, the City of San Francisco leased a former Naval shipyard to use as a facility for San Francisco Police Department (SFPD) employees. The plaintiffs—current and former SFPD employees, along with their family members—sued the United States, claiming that it had misled the City and the SFPD about the safety of the contaminated shipyard. The key question before us is whether the FTCA's misrepresentation exception requires the federal government to have made the alleged misrepresentations directly to the plaintiffs—or if making allegedly false statements to the City or the SFPD is enough to invoke this exception and bar the plaintiffs' claims.

We hold that the FTCA's misrepresentation exception to the sovereign immunity waiver applies because it precludes any claims "arising out of" a misrepresentation. 28 U.S.C. § 2680(h). And in our case, the plaintiffs' claims "arise" out of the Navy's alleged misrepresentations, even if the Navy did not directly make them to the plaintiffs. Our precedent—which directs courts to look at the "gravamen" of the complaint—confirms our reading of the FTCA's misrepresentation exception.

We also reject the plaintiffs' argument that the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) has implicitly limited or suspended the misrepresentation exception. 42 U.S.C. § 9620(h)(1). While CERCLA imposes a duty of disclosure about environmental health hazards on federally owned property, neither the statutory text nor canons of statutory construction suggest that Congress intended CERCLA to override the FTCA's misrepresentation exception. We thus affirm the district court's dismissal of the lawsuit for lack of subject matter jurisdiction.

## I.    Factual Background

Hunters Point Naval Shipyard is a 965-acre former naval base located along the San Francisco Bay. During the Cold War, the Naval Radiological Defense Laboratory operated there, undertaking research and decontamination of radioactive vessels used in nuclear weapon tests.

In 1989, the Environmental Protection Agency (EPA) determined that the shipyard qualified under CERCLA as a "Superfund" site, requiring the Navy to remediate it before it could be reused. 42 U.S.C. § 9601 *et seq.* The Navy signed an agreement with EPA and California governmental entities setting a schedule for environmental remediation. The Navy also contracted with Tetra Tech, Inc. to plan and oversee testing, investigation, and cleanup activities.

The plaintiffs allege that the Navy negligently supervised Tetra Tech and that Tetra Tech perpetrated extensive fraud. Despite these alleged failures, the Navy began negotiating a lease of the Building 606 Property at the shipyard to the City for use by the SFPD. According to the plaintiffs, the Navy "negligently performed its inspection, investigation, and record review, and negligently told the

City that there was no history of any radioactive substances at the Building 606 Property."

In particular, the plaintiffs assert that the Navy misrepresented the safety of the site in two 1996 lease documents prepared under CERCLA § 120(h)(1)'s disclosure requirement. Relying on these alleged misrepresentations, the City agreed to lease the site for use by the SFPD. The SFPD, too, relied on the Navy's misrepresentations in these two documents. And, as the plaintiffs tell it, the Navy and Tetra Tech continued to misrepresent the safety of the shipyard to the City and the SFPD.

As a result of these misrepresentations, SFPD employees claim that they were exposed to "radiological and non-radiological contamination" at the site, causing health problems and elevating their risk of developing life-threatening diseases.

## II.   Procedural History

In 2020, the plaintiffs sued the United States. The government moved to dismiss for lack of subject matter jurisdiction, contending that the claims fall outside the United States' waiver of sovereign immunity. *See* 28 U.S.C. §§ 1346(b), 2671, 2680(a), 2680(h). The district court dismissed the First Amended Complaint without prejudice and advised the plaintiffs that the FTCA's "misrepresentation exception . . . appears likely to bar at least some portion" of their claims.

The plaintiffs then filed their Second Amended Complaint (SAC), asserting, among other things, negligent undertaking, negligent failure to warn, negligent supervision, negligence per se, negligent misrepresentation,

and negligent infliction of emotional distress. The government once again moved to dismiss for lack of subject matter jurisdiction. And the district court again dismissed the complaint on that basis. It concluded that the plaintiffs had "doubled down on the misrepresentation theory" in the SAC. The court reasoned that the "alleged misrepresentations in this case are by no means 'collateral to the gravamen' of the SAC." *See Esquivel v. United States*, 21 F.4th 565, 578 (9th Cir. 2021). Rather, the court stressed, "[m]isrepresentation is at the heart of all of the claims in the SAC."

The district court rejected the plaintiffs' contention that the misrepresentation exception did not apply. The plaintiffs argued that because the misstatements were made to the City and their employer (SFPD)—and not to SFPD employees—they did not detrimentally rely on the false information, as required under the common law tort of misrepresentation. The district court reasoned that the "plain language of 28 U.S.C. § 2680(h) exempts from the FTCA's waiver of sovereign immunity '[a]ny claim arising out of . . . misrepresentation.'" The court also rejected the argument that CERCLA has limited or suspended the misrepresentation exception. The district court dismissed the SAC with prejudice, and the plaintiffs timely appealed.

## STANDARD OF REVIEW

We review de novo a district court's dismissal for lack of subject matter jurisdiction under the FTCA. *Leuthauser v. United States*, 71 F.4th 1189, 1193 (9th Cir. 2023) (citing *Foster v. United States*, 522 F.3d 1071, 1074 (9th Cir. 2008)).

## ANALYSIS

### I. The FTCA waived sovereign immunity for certain tort claims, but not for those arising out of misrepresentation.

Although not explicitly mentioned in the Constitution, the principle of sovereign immunity long predates the American Founding. *See Alden v. Maine*, 527 U.S. 706, 715–16 (1999) (surveying English common law on sovereign immunity). The Framers accepted this long-held view and thus "considered immunity from private suits central to sovereign dignity." *Id.* at 715; *see also* The Federalist No. 81, p. 511 (B. Wright ed. 1961) (A. Hamilton) ("It is inherent in the nature of sovereignty not to be amenable to the suit of an individual *without its consent.*" (emphasis in original)). And given this historical backdrop, the Supreme Court has recognized that federal courts lack jurisdiction over suits against the United States unless "it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586 (1941).

Congress, though, enacted the FTCA in 1946, which as amended waives immunity for tort claims alleging:

> injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the

claimant in accordance with the law of the
place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

The FTCA, however, clawed back certain classes of tort
suits from its broad sovereign immunity waiver. It excludes
from its scope "[a]ny claim arising out of assault, battery,
false imprisonment, false arrest, malicious prosecution,
abuse of process, libel, slander, *misrepresentation*, *deceit*, or
interference with contract rights . . . ." *Id.* § 2680(h)
(emphasis added). The Supreme Court has long held that
based on the inclusion of both "misrepresentation" and
"deceit," section 2680(h) bars claims "arising out of
negligent, as well as willful, misrepresentation." *United
States v. Neustadt*, 366 U.S. 696, 702 (1961). And the
misrepresentation exception also encompasses omissions.
*City & Cnty. of S.F. v. United States*, 615 F.2d 498, 504–05
(9th Cir. 1980).

The "plaintiff bears the burden of persuading the court
that it has subject matter jurisdiction under the FTCA's
general waiver of immunity," and the United States bears the
burden of proving that a waiver exception applies. *Prescott
v. United States*, 973 F.2d 696, 701–02 (9th Cir. 1992)
(citing 28 U.S.C. § 1346(b)).

II. **The district court properly dismissed the lawsuit for lack of subject matter jurisdiction under the FTCA's misrepresentation exception.**

A. **Under the plain text of section 2680(h), the claims "arise out of" misrepresentation and thus fall within the waiver exception.**

Our analysis begins, as it must, with the statutory text. *Leuthauser*, 71 F.4th at 1194. The plain language of 28 U.S.C. § 2680(h) exempts from the FTCA's waiver of sovereign immunity "[a]ny claim arising out of . . . misrepresentation." The Supreme Court has held that "the essence of an action for misrepresentation, whether negligent or intentional, is the communication of misinformation on which the recipient relies." *Block v. Neal*, 460 U.S. 289, 296 (1983). The question before us is thus whether the plaintiffs' claims "arise out of" the Navy's alleged misrepresentations about the safety of the shipyard. We hold that they do.

We have generally given "arising out of" or "arising from"—terms commonly used by Congress—a broad construction in other statutory contexts. *See, e.g.*, *In re Tristar Esperanza Props., LLC*, 782 F.3d 492, 497 (9th Cir. 2015); *In re Border Infrastructure Env't Litig.*, 915 F.3d 1213, 1220 (9th Cir. 2019). We have held that "arising out of" generally means "'originating from,' . . . 'growing out of,' or . . .'incident to, or having connection with.'" *In re Tristar*, 782 F.3d at 497 (quoting *Underwriters at Lloyd's of London v. Cordova Airlines, Inc.*, 283 F.2d 659, 664 (9th Cir. 1960)).

So by its plain text, section 2680(h) does not merely preclude claims *for* misrepresentation. Rather, it bars any claim "arising out of" misrepresentation. *Cf. id.*; *see United*

*States v. Shearer*, 473 U.S. 52, 55 (1985) (plurality opinion) ("Section 2680(h) does not merely bar claims *for* assault or battery; in sweeping language it excludes any claim *arising out of* assault or battery."); *Life Partners Inc. v. United States*, 650 F.3d 1026, 1032 (5th Cir. 2011) ("The FTCA's misrepresentation exception is broad: it bars any claim arising out of a misrepresentation—even if the conduct underlying the claim may also constitute a tort not barred by section 2680(h)."). And here, the claims plainly "arise out of" the Navy's alleged misrepresentations to the City and the SFPD about hazardous substances at the shipyard. The complaint alleges that the Navy's misrepresentations to "the City . . . about the hazardous substances used and released at [the site] was a substantial factor in causing the Plaintiffs'" injuries. And the plaintiffs further allege that the SFPD expressly relied on these alleged misrepresentations "first in relocating hundreds of employees . . . to [the shipyard]" and then in "continuing to have [them] work there during Tetra Tech's remediation activities." In sum, the complaint makes clear that the claims arise out of the Navy's misrepresentations—and that they thus fall within the FTCA's misrepresentation exception.

This reading of the FTCA's "arising out of" language dovetails with our case law providing that courts should determine whether the government's misrepresentation constitutes the "essence" or "gravamen" of a plaintiff's complaint. *See Esquivel*, 21 F.4th at 578 (applying the misrepresentation exception where the "alleged misrepresentation . . . [was] not collateral to the gravamen of the complaint"); *Sabow v. United States*, 93 F.3d 1445, 1456 (9th Cir. 1996), *as amended* (Sept. 26, 1996) ("We focus our § 2680(h) inquiry on whether conduct that constitutes an enumerated tort is 'essential' to a plaintiff's claim."); *see*

*also Mt. Homes, Inc. v. United States*, 912 F.2d 352, 355 (9th Cir. 1990); *Block*, 460 U.S. at 296; *Neustadt*, 366 U.S. at 704.

Put another way, our case law indicates that a claim is barred as "arising out of" misrepresentation if its "gravamen" or "essence" is the government's communication of false information. Conversely, a claim can proceed under the FTCA if it is predicated on "the Government's breach of a different duty"—even if false information is collaterally involved. *Block*, 460 U.S. at 297 (holding that section 2680(h) was inapplicable because "the Government's misstatements [were] not essential to plaintiff's negligence claim"); *see also Esquivel*, 21 F.4th at 578.

In determining the "gravamen" or "essence" of the claim, we must "'look[] beyond the labels,'" and appraise "'the alleged 'conduct on which the claim is based.'" *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1123 (9th Cir. 2019) (citations omitted). Otherwise, plaintiffs could creatively plead around the FTCA's misrepresentation exception. *Id.* ("[I]f the governmental conduct underlying a claim falls within an exception outlined in section 2680, the claim is barred, no matter how the tort is characterized."); *see also, e.g., Thomas-Lazear v. F.B.I.*, 851 F.2d 1202, 1207 (9th Cir. 1988) (reasoning that a "claim for negligent infliction of emotional distress is nothing more than a restatement of the slander claim, which is barred by section 2680(h)").

Here, the Navy's alleged misrepresentations are not "collateral to the gravamen" of the complaint, *Esquivel*, 21 F.4th at 578, but rather "essential" to each claim, *see Sabow*, 93 F.3d at 1456; *Thomas-Lazear,* 851 F.2d at 1207. As the

district court pointed out, the plaintiffs had "doubled down on the misrepresentation theory" in their complaint. And because the "gravamen" or "essence" of the claims is rooted in misrepresentation, they "arise out of" the Navy's allegedly false statements and fall within the FTCA's misrepresentation exception.

### B. The Supreme Court has not required a misrepresentation to be made to the plaintiffs for the FTCA's waiver exception to apply.

Faced with the FTCA's text and our case law supporting that plain meaning construction, the plaintiffs argue that the misrepresentation exception does not apply if the false information was neither made directly to nor relied on by the plaintiffs. Here, they contend, the Navy misrepresented the safety of the shipyard to third parties—the City and their employer, SFPD—and the plaintiffs themselves did not detrimentally rely on those false statements. As the plaintiffs have it, they were merely "unfortunate and foreseeable victims of the misrepresentations that were made" to and relied on by the City in leasing the contaminated property from United States.

The plaintiffs hitch this theory on out-of-context language from a pair of Supreme Court cases—*Neustadt* and *Block*—that observed that Congress contemplated the "traditional and commonly understood legal definition of the tort of 'negligent misrepresentation'" in drafting the FTCA exceptions. *Neustadt*, 366 U.S. at 706–07; *see also Block*, 460 U.S at 296. Under the traditional tort of negligent misrepresentation, detrimental reliance by a plaintiff is an "essential element" of the claim. And because the City and SFPD—not the plaintiffs—detrimentally relied on Navy's misrepresentations, the plaintiffs argue that their claims do

not fall within the common law definition of the tort of negligent misrepresentation.

We reject the plaintiffs' argument for several reasons.

First, neither *Neustadt* nor *Block* squarely addressed section 2680(h)'s "arising out of" language, so neither decision supports—as a matter of statutory construction—the plaintiffs' argument that only claims *for* misrepresentations personally relied upon by the plaintiff are expressly barred. *Cf. Shearer*, 473 U.S. at 55 (plurality stating that assault and battery exception does not just bar claims for assault and battery but those arising out of the same).

Second, neither case addressed the question before us—whether the misrepresentation exception applies when a third-party, rather than the plaintiff, relies on the government's misrepresentations that allegedly injured the plaintiff. Rather, in both *Neustadt* and *Block*, the Court emphasized the traditional tort of misrepresentation to distinguish between (1) claims grounded in the government's failure "to use due care in communicating information" (which are barred by section 2680(h)), and (2) negligence claims which may collaterally involve misstatements but ultimately center upon "the Government's breach of a different duty" (which are not barred). *Block*, 460 U.S. at 297.

In *Neustadt*, the Court stressed that section 2680(h) bars negligent misrepresentation claims, no matter how a plaintiff characterizes them. *See* 366 U.S. at 703. The Neustadts had relied on an appraisal conducted by the Federal Housing Administration (FHA) for mortgage insurance purposes. *Id.* at 699–701. But the FHA had failed to identify latent structural defects, and the Neustadts later noticed cracks

forming in the ceilings and walls of their house.  *Id.* at 700. They sued under the FTCA, alleging that the FHA negligently inspected and appraised the property and that they justifiably relied on the faulty appraisal.  *Id.*

The Court held that the claim was barred by section 2680(h), rejecting the Neustadts' argument that it arose out of the FHA's negligence, not a misrepresentation.  *Id.* at 706–07.  Rather, the Court reasoned, the Neustadts' claim amounted to "the traditional and commonly understood legal definition of the tort of 'negligent misrepresentation,'" *id.* at 706.  The Court explained that to characterize the Neustadts' claims as "'arising out of' negligence rather than 'misrepresentation,' . . . is nothing more than an attempt to circumvent [section] 2680(h) by denying that it applies to negligent misrepresentation."  *Id.* at 703.  So neither *Neustadt*'s holding nor its analysis supports the plaintiffs' argument that the misrepresentation must be made directly to the plaintiffs for section 2680(h) to apply.

Likewise, *Block* does not add much to the plaintiffs' argument.  In that case, the plaintiff, Neal, had secured a loan from the Farmers Home Administration (FmHA) for the construction of a prefabricated house.  *Block*, 460 U.S at 290–91.  Neal then entered a contract with a builder requiring the construction to conform to FmHA-approved plans and granting FmHA the right to inspect and supervise construction.  *Id.* at 291.  A FmHA supervisor inspected the home and issued a report confirming that it met FmHA's specifications.  *Id.* at 292.  Neal later discovered substantial defects and sued under the FTCA.  *Id.*  The government contended that the claim arose out of her reliance on the inspection reports containing misrepresentations about the house's construction.  *Id.* at 297.

Noting that "the essence of an action for misrepresentation . . . is the communication of misinformation on which the *recipient* relies," the Court explained that the misrepresentation exception "does not bar negligence actions which focus not on the Government's failure to use due care in communicating information, but rather on the Government's breach of a different duty," *id.* at 296–97 (emphasis added). Distinguishing *Neustadt*, the *Block* Court held that Neal's claim was not barred by section 2680(h) because she "d[id] not seek to recover on the basis of misstatements made by FmHA officials." *Id.* at 299. The Court reasoned that while the FmHA "may have undertaken both to supervise construction of Neal's house and to provide Neal information regarding the progress of construction, Neal's action is based *solely on the former conduct*." *Id.* (emphasis added). That is, "the FmHA's duty to use due care to ensure that the builder adhered to the approved plans and cured all defects before completing construction was distinct from any duty to use due care in communicating information to [Neal]." *Id.* at 297.

In both cases, the Supreme Court referenced the common law tort of negligent misrepresentation to distinguish between (1) claims in which the government's misstatements are "essential" (which are barred by the FTCA) and (2) "negligence actions which focus not on the Government's failure to use due care in communicating information, but rather on the Government's breach of a different duty" (which are not precluded by the FTCA). *Id.* And here, as explained earlier, the Navy's alleged misrepresentations are "essential" to the complaint.

Ignoring this broader context of the decisions, the plaintiffs pluck out language from *Neustadt* and *Block* discussing a plaintiff's detrimental reliance as an element of

the traditional tort of negligent misrepresentation. But "the language of an opinion is not always to be parsed as though we [are] dealing with [the] language of a statute." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 341 (1979). Rather, as the Supreme Court has stressed, "opinions dispose of discrete cases and controversies[,] and they must be read with a careful eye to context" and the specific facts at bar. *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 373–74 (2023) (citing *Cohens v. State of Virginia*, 19 U.S. 264, 399–400 (1821) (Marshall, C.J.)); *see also Cohens*, 19 U.S. at 399 ("It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used."). We thus reject the plaintiffs' reading of *Block* and *Neustadt* as requiring detrimental reliance by the plaintiff for the FTCA's misrepresentation exception to apply.

### C. The Ninth Circuit, along with two other circuits, has applied the misrepresentation exception even without detrimental reliance by the plaintiff.

Our decision today is consistent with circuit precedent: our circuit has taken a broad view of the FTCA's misrepresentation exception and applied it even if the allegedly false statement was not made directly to the plaintiff. *See Alexander v. United States*, 787 F.2d 1349, 1350–51 (9th Cir. 1986); *Lawrence v. United States*, 340 F.3d 952, 958 (9th Cir. 2003).

In *Alexander*, the plaintiff received a conditional job offer from the Pacific Stock Exchange, which solicited a background check from the FBI. 787 F.2d at 1350. The FBI sent his "rap sheet," which "purportedly contained two arrest items that should not have been released because they had

been ordered sealed by a California court." *Id.* at 1350. The plaintiff then sued the United States, alleging that the government negligently failed to excise the information from his record. *Id.*

We held that the plaintiff's negligence claim was barred by section 2680(h). *See id.* at 1350–51. In so doing, we stressed the "broad reach of the 'misrepresentation' exception of section 2680(h)," holding that the plaintiff's "claim . . . fits squarely into the category of 'negligent misrepresentation,'" *id.* at 1351. Although we did not directly address the question before us today, the facts of the case made clear that the alleged misrepresentation was not made to the plaintiff but to a third-party, his employer; yet, we still held that the exception applied. *See id.* at 1350–51. The plaintiffs' argument is at odds with the result in *Alexander*.

Similarly, we adopted a more expansive view of the misrepresentation exception in *Lawrence*, where a minor plaintiff was sexually abused by her foster parent, a felon. 340 F.3d at 953–54. The plaintiff alleged that a federal marshal and probation officer failed to provide complete and accurate information to a state licensing agency about the felon's criminal history. *Id.* at 958. We held that the plaintiff's FTCA claim was barred by the misrepresentation exception, stating that the "claim was based on [the federal officers'] alleged failure to communicate certain information at the exemption hearing." *Id.*

The plaintiffs urge that these cases are not controlling because neither *Alexander* nor *Lawrence* "'squarely address[ed]'" the reliance issue and thus did not explicitly reject the argument that they advance here. *United States v. Kirilyuk*, 29 F.4th 1128, 1134 (9th Cir. 2022) (citation

omitted).  Even so, we merely note that our holding today
tracks our earlier decisions applying section 2680(h) even
absent personal detrimental reliance by the plaintiff.

We are also not alone in our interpretation of the FTCA's
misrepresentation exception.   The Eleventh Circuit has
squarely held that the misrepresentation exception applies
even if the alleged misrepresentation was neither received
nor relied on by the plaintiff. *JBP Acquisitions, LP v. United
States ex rel. FDIC*, 224 F.3d 1260, 1266 (11th Cir. 2000);
*see also Zelaya v. United States*, 781 F.3d 1315, 1333 (11th
Cir. 2015) (explaining that the "phrase 'arising out of' is
interpreted broadly to include all injuries that are dependent
upon one of the listed torts having been committed").

In *JBP Acquisitions*, the United States had sold plaintiff
JPB, a real estate investment company, a loan secured by a
low-income housing project.  224 F.3d at 1262.  But, at the
same time, the government acted as if it still owned the loan
and negotiated with another entity, which condemned and
bulldozed the property.  *Id.*  The court held that JBP's claims
were barred by section 2680(h) because the lawsuit was
based on the "[g]overnment's misrepresentation to [the
bulldozing purchaser] regarding [the government's] current
ownership of the loan." *Id.* at 1265 (emphasis deleted).  The
court held that "it does not matter for purposes of the
misrepresentation exception whether the misrepresentations
causing JBP's claims were made directly to it or to some
third party." *Id.* at 1266.[1]

---

[1] The court "emphasize[d] that at its core the negligent 'act' is the
Government's misrepresentation" both to the bulldozing purchaser
"regarding its ownership interest in the Property and its

The Fifth Circuit, too, has similarly applied the misrepresentation exception to bar FTCA claims when a plaintiff's alleged injury results from third-party reliance on the government's misrepresentations. *See, e.g.*, *Baroni v. United States,* 662 F.2d 287, 288–89 (5th Cir. 1981) (applying the misrepresentation exception to bar plaintiff homeowners' claims, even though the government's miscalculation of the flood level was communicated to the real estate developer); *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 377–78 (5th Cir. 1987).

### D. Out-of-circuit precedents do not support the plaintiffs' narrow view of the misrepresentation exception.

The plaintiffs respond by citing other out-of-circuit authority. But each case is distinguishable, and none addresses the issue of third-party reliance implicated here. As with *Neustadt* and *Block*, each case focuses on the distinction between negligence claims in which the misstatements are collateral to the suit's gravamen and those truly premised on the government's misrepresentations.

First, the plaintiffs rely on *Jimenez-Nieves v. United States*, 682 F.2d 1 (1st Cir. 1982), in which the Social Security Administration (SSA) ceased paying benefit checks because of a government clerk's typographical error. *Id.* at 2. The First Circuit held that the FTCA's misrepresentation exception did not apply because the alleged false statement—the typo—"did not directly injure the plaintiff; it

---

misrepresentation to *JBP* regarding its continued negotiation in the condemnation proceedings." *Id.* (emphasis added). The court stressed that without the government's misrepresentation to the third-party purchaser, the condemnation and the demolition would not have occurred. *See id.* at 1265.

was simply the internal bureaucratic cause of other agency action—dishonoring the checks." *Id.* at 4. In making this point, the First Circuit cited *Neustadt*'s reference to "the 'traditional and commonly understood definition of the tort'" when the FTCA was enacted. *Id.* at 3–4 (quoting *Neustadt*, 366 U.S. at 706). The court then observed that "one essential element of misrepresentation remains reliance by the plaintiff himself upon the false information that has been provided." *Id.* at 4 (citations omitted). Because the false statement "was not made to the plaintiff and he did not rely upon it," the misrepresentation exception did not bar the plaintiff's claims. *Id.* at 5.

Although *Jimenez-Nieves* does include some language that facially supports the plaintiffs, the case again turns on the distinction between claims premised on the government's communication of false information (which fall within the misrepresentation exception) and those premised on the government's breach of some alternate duty (which do not fall within the misrepresentation exception). The "false statement" at issue in *Jimenez-Nieves* was a clerical error by the SSA in intra-agency communications. *Id.* at 2. So, by definition, the government's misrepresentations could not have been relied on by the plaintiff—or by anyone else outside the agency, for that matter. The First Circuit referred to *Neustadt* only to underscore that the "false statement" (the typo) did not harm the plaintiff and that other governmental action caused the injury.

The plaintiffs next cite *Saraw Partnership v. United States*, 67 F.3d 567 (5th Cir. 1995), in which the Fifth Circuit held that a negligence claim was not barred where the Veterans Administration (VA) incorrectly entered a plaintiff's loan payments, resulting in foreclosure of his

property. *Id.* at 571. There, the government contended that the plaintiff's alleged injury was caused by the VA's failure to tell the plaintiff that it had not received his loan payments. *Id.* at 570. The *Saraw Partnership* court first relied on Ninth Circuit case law distinguishing between "misrepresentation" and the negligent "performance of operational tasks." *Id.* at 570–71 (citing *Mundy v. United States*, 983 F.2d 950, 952 (9th Cir. 1993)). The Fifth Circuit reasoned that the "case is not about reliance on faulty information or on the lack of proper information; rather, the gist of this case is the government's careless handling of Saraw's loan payments." *Id.* at 571. The claim centered on the government's operational negligence, and any lack of communication was "collateral" to the mishandling of loan payments. *Id.*

The *Saraw Partnership* court then concluded that the misrepresentation exception was further inapplicable because Saraw did not detrimentally rely on any lack of communication by the government. *Id.* The appellants rely on this snippet, but the Fifth Circuit did not address the issue of third-party reliance. *See generally id.* And, in any event, the case is distinguishable along the same lines as *Jimenez-Nieves*: the crux of the dispute similarly revolved around the intra-agency clerical error, not any misrepresentation. *See Est. of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 854–55 (10th Cir. 2005) (describing *Saraw Partnership* as a case refusing to apply the misrepresentation exception to a claim for which a misrepresentation was only "collaterally involved").

Finally, the plaintiffs cite *Estate of Trentadue*, where the Tenth Circuit observed that both "reliance by the plaintiff . . . upon the false information that has been provided,' and 'pecuniary loss'" are the twin essential elements of misrepresentation. 397 F.3d at 854 (quoting *Jimenez–*

*Nieves,* 682 F.2d at 5); *see also id.* at 855. There, family members of a deceased prisoner brought a claim for intentional infliction of emotional distress for, among other things, the government's failure to inform the family members of the battered condition of the prisoner's body before sending them the remains. *Id.* The government invoked the FTCA's misrepresentation exception, contending that the family alleged "no conduct independent of a failure to communicate" information about the remains. *Id.* at 854.

The Tenth Circuit disagreed, concluding that "even acknowledging that the government failed to inform the Trentadues of certain facts," their "emotional distress arises from the government's callous treatment of the family in the aftermath of Trentadue's death, including its shipping of Trentadue's battered remains to unsuspecting family members." *Id.* at 855. *Estate of Trentadue* is distinguishable for two reasons. First, the misrepresentation was made directly to the Trentadues, so the court had no occasion to consider the issue of third-party reliance. *See id.* And second, the central issue was whether the government's false statements and nondisclosure were "more than collaterally involved and constitute the very conduct giving rise to plaintiffs' emotional distress claim." *Id.* Here, in contrast, the Navy's alleged misrepresentations to the City are the precise conduct giving rise to the claims. There can be no argument that the misrepresentations are merely "collaterally involved" in the plaintiffs' claims.

\* \* \* \*

To recap: Our interpretation of the misrepresentation exception—focusing on the "gist," "gravamen," or "essence" of plaintiffs' claims—reflects the reasoning of

*Neustadt*, *Block*, and longstanding Ninth Circuit precedent. *See, e.g.*, *Esquivel*, 21 F.4th at 578; *cf. Mt. Homes, Inc.*, 912 F.2d at 355.  The Navy's alleged misrepresentations are "essential" to the plaintiffs' negligence claims.  *Block*, 460 U.S. at 297.  We thus hold that the claims "arise out of" misrepresentation and fall within the FTCA waiver exception.  *Cf. Esquivel*, 21 F.4th at 578; *Shearer,* 473 U.S. at 55.

### III.   CERCLA § 120(h)(1) does not "limit or suspend" the FTCA's misrepresentation exception.

The plaintiffs also contend that even if the FTCA's misrepresentation exception applies, section 120(h) of CERCLA imposes a "specific and mandatory duty of accurate disclosure on the Navy," thus implicitly "limit[ing] or suspend[ing]" the misrepresentation exception in this case.  *See* 42 U.S.C. §§ 9620(h)(1), 9620(h)(3)(A)(ii).

This is a question of first impression in this circuit, and it appears that no other court has addressed the issue. Section 120(h) is silent as to its effect not only on the FTCA's misrepresentation exception but also on potential tort liability under CERCLA more generally.   Using ordinary principles of statutory construction, we conclude that Congress did not silently waive sovereign immunity for certain misrepresentation claims under CERCLA section 120(h).

Section 120(h)(1)'s disclosure provision states that

> whenever any department, agency, or instrumentality of the United States enters into any contract for the sale or other transfer of real property which is owned by the United States and on which any hazardous substance

was stored for one year or more, known to have been released, or disposed of, the head of such department, agency, or instrumentality *shall include in such contract notice of the type and quantity of such hazardous substance and notice of the time at which such storage, release, or disposal took place*, to the extent such information is available on the basis of a complete search of agency files.

42 U.S.C. § 9620(h)(1) (emphasis added). Section 120(h)(3)(A), in turn, requires that "each deed entered into for the transfer of such property by the United States to any other person or entity shall contain . . .

(ii) a covenant *warranting* that—

(I) all remedial action necessary to protect human health and the environment with respect to any such substance remaining on the property has been taken before the date of such transfer, and

(II) any additional remedial action found to be necessary after the date of such transfer shall be conducted by the United States . . . .

*Id.* § 9620(h)(3)(A)(ii) (emphasis added).

The plaintiffs insist that section 120(h)'s disclosure requirement shows that Congress intended it as a guarantee to buyers and lessees about the safety of the federal property. And so, their argument goes, by adopting CERCLA section

120(h), Congress intended to limit or suspend the FTCA's misrepresentation exception. This argument fails.

### A. Congress did not silently limit or suspend application of the misrepresentation exception through CERCLA § 120(h).

As a matter of statutory interpretation, we presume that Congress was aware of the FTCA's misrepresentation exception and its judicial construction when enacting CERCLA section 120(h). *See Progressive W. Ins. Co. v. Preciado,* 479 F.3d 1014, 1018 (9th Cir. 2007) ("'Faced with statutory silence . . . , we presume that Congress is aware of the legal context in which it is legislating.'" (alteration in original) (quoting *Abrego Abrego v. Dow Chem. Co.,* 443 F.3d 676, 683–84 (9th Cir. 2006) (per curiam))). CERCLA was enacted decades after the FTCA, an oft-litigated statute that should be familiar to Congress. Nothing in CERCLA references the FTCA or even implies that it intended to supersede the FTCA or its exceptions. Confronted with statutory silence, we presume that Congress did not displace the FTCA's misrepresentation exception in enacting CERCLA section 120(h).

Further, we "strictly construe waivers of sovereign immunity, which must be 'unequivocally expressed in the statutory text'" in favor of the United States. *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 840 (9th Cir. 2012) (citation omitted). This principle of statutory construction is sometimes called the "presumption against the waiver of sovereign immunity" or the "sovereign immunity canon." *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 281 (2012) ("a federal statute does not eliminate state sovereign immunity—unless that disposition is unequivocally clear");

*see also Plaskett v. Wormuth*, 18 F.4th 1072, 1087 (9th Cir. 2021) (holding that scope of waiver is also "strictly construed" in the government's favor (citation omitted)). This longstanding rule was part of the legal backdrop at the time of CERCLA's enactment—and Congress said nothing to suggest that it intended to curtail the misrepresentation exception.

The statutory silence about the FTCA—or tort claims more generally—takes on added significance given that CERCLA actually does waive sovereign immunity for certain claims. Section 120(a)(1) unambiguously waives sovereign immunity for CERCLA suits—at least to recover for clean-up costs. *See United States v. Shell Oil Co.*, 294 F.3d 1045, 1053 (9th Cir. 2002) (allowing clean-up suits against the United States under 42 U.S.C. § 9607). So, although Congress expressly waived sovereign immunity for clean-up lawsuits in CERCLA, it remained silent about suspending or limiting waiver exceptions for tort lawsuits against the United States. This circumscribed waiver in CERCLA suggests that Congress did not disturb the FTCA's sovereign immunity waiver framework. In short, there is simply no indication from the text of section 120 that Congress intended to suspend the FTCA's misrepresentation exception *sub silentio*. *Cf. Neustadt*, 366 U.S. at 710–11 (stating that courts cannot "justifiably ignore the plain words Congress has used in limiting the scope of the Government's tort liability").

## B. Neither *Neustadt* nor its out-of-circuit progeny supplants ordinary principles of statutory construction.

In arguing that CERCLA section 120(h) displaces the misrepresentation exception, the plaintiffs return to *Neustadt*

in which the Supreme Court held that the exception was not limited or suspended by the government's duty to provide accurate appraisals under the National Housing Act. 366 U.S. at 708–09. They also rely on *City of Garland v. Zurn Industries, Inc.*, 870 F.2d 320, 325 (5th Cir. 1989), in which the Fifth Circuit similarly concluded that the obligations imposed on the EPA under the Clean Water Act, 33 U.S.C. § 1251 *et seq.*, did not limit or suspend the FTCA's misrepresentation exception.

Notably, neither of these cases actually held that another federal statute has impliedly displaced the FTCA's misrepresentation exception, and the plaintiffs do not identify any case so holding. Rather, the plaintiffs primarily focus on distinctions between CERCLA and the laws that courts have found *not* to displace the misrepresentation exception, arguing that CERCLA presents a stronger case for displacement. The plaintiffs insist that—unlike the provisions of the National Housing Act or the Clean Water Act in *Neustadt* and *Zurn Industries*, respectively— "CERCLA's plain language imposes a specific and mandatory duty of accurate disclosure on the United States," evidencing Congressional intent to override the misrepresentation exception.

The plaintiffs read too much into too little. *Neustadt* mentioned two considerations in determining whether a statute evinces a congressional intent to "limit or suspend" the misrepresentation exception: (1) whether the government intended to warrant the accuracy of the information disclosed, and (2) whether the disclosure requirement is central to the primary purpose of the statutory scheme. *See Neustadt*, 366 U.S. at 708–11; *see also Zurn Indus.*, 870 F.2d at 324–26. The plaintiffs may well be correct that the first guidepost favors them: the statutory

disclosure requirements in *Neustadt* and *Zurn Industries* may not be as ironclad in promising accuracy as the one in CERCLA.**2**

But that is largely beside the point here. The two-pronged analysis in *Neustadt* did not establish an exclusive or dispositive test for determining whether Congress has suspended or limited exceptions to the sovereign immunity waiver; at most, it merely sets interpretive guideposts to consider in construing a statute. Ultimately *Neustadt*'s inquiry cannot supplant our duty to interpret statutes based on the text, its context, and general principles of statutory construction. *Cf. Kisor v. Wilkie*, 588 U.S. 558, 575 (2019) (court must "empty" its "legal toolkit" containing all the "traditional tools" of interpretation used to "carefully consider the text, structure, history, and purpose" of the statute or regulation (internal quotation marks and alteration omitted)).

---

2 The second guidepost, however, does not clearly favor either side. On the one hand, this circuit has observed that "CERCLA was enacted to protect and preserve *public health* and the environment . . . ." *Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 880 (9th Cir. 2001) (internal quotation marks and citation omitted) (emphasis added). On the other hand, the same could be said of any environmental legislation, including the Clean Water Act, which was at issue in *Zurn Industries*. *See* 40 C.F.R. § 131.3(i) (Clean Water Act regulation stating that the purpose of "water quality standards are to *protect the public health or welfare*, enhance the quality of water and serve the purposes of the Act" (emphasis added)). Indeed, we might just as easily conclude that, as with the Clean Water Act, "the environment itself was the intended beneficiary of" CERCLA section 120(h)'s mandatory disclosure regime. *Zurn Indus.*, 870 F.2d at 325. CERCLA's twin overriding purposes—common to nearly all landmark environmental legislation—do not indicate Congressional intent to silently create a right of redress against the government in tort for violating section 120(h).

To sum things up, neither *Neustadt* nor its out-of-circuit progeny dictates displacement of our ordinary rules of statutory construction. As explained, we both (a) presume that Congress was aware of the FTCA's misrepresentation exception in enacting CERCLA, *see Neustadt*, 366 U.S. at 710, and (b) construe any ambiguity in the scope of a waiver of sovereign immunity in the government's favor, *Hunsaker v. United States*, 902 F.3d 963, 967 (9th Cir. 2018). The plaintiffs have pointed to no authority showing that, by enacting CERCLA section 120(h), Congress intended to limit or suspend the FTCA's misrepresentation exception. Because we "presum[e] that Congress legislates with knowledge of our basic rules of statutory construction," *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496 (1991), we decline the plaintiffs' invitation to infer such intent out of thin air.

## CONCLUSION

We do not diminish the gravity of Navy's supposed negligence in failing to disclose the environmental health hazards at the shipyard. But we are not at liberty to "ignore the plain words Congress has used in limiting the scope of the Government's tort liability." *Neustadt*, 366 U.S. at 710–11. The claims here against the United States "aris[e] out of" misrepresentation and thus are barred by the plain language of 28 U.S.C. § 2680(h). We affirm the district court's dismissal of the complaint for lack of subject matter jurisdiction.

**AFFIRMED.**